# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THRIVEST SPECIALTY FUNDING, LLC | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 18-4764 |
| v. | : | |
| TOBY L. WRIGHT, | : | |
| Defendant. | : | |

## **Memorandum**

On August 12, 2019, the Court entered an Order ("Escrow Order") confirming an interim arbitration award that directed Wright to escrow $800,000 in disputed funds pending resolution of the underlying arbitration in this case. ECF No. 35. On October 21, 2019, the Court issued an Order ("Contempt Order") holding Wright in contempt for failure to comply with the Escrow Order. ECF No. 68. On November 5, 2019, arbitration concluded, and the arbitrator entered a final arbitration award in favor of Thrivest. This award was modified on November 20, 2019. On January 2, 2020, the Court issued an Order ("Final Judgment Order") confirming the final arbitration award (as modified) and entering final judgment in favor of Thrivest. ECF No. 98.

On February 27, 2020, the Court issued an Order to Show Cause (ECF No. 98) as to why the Contempt Order should not be vacated. The Order to Show Cause pointed out that (1) it is inappropriate to enforce money judgments via contempt proceedings and (2) there is now a final money judgment in this case. Thrivest agrees. Thrivest argues, however, that the Court's interim Escrow Order is not a money judgment, and may therefore continue to be enforced through contempt even though a final money judgment now exists.

This argument misplaces its focus because, in any event, it is clear at this juncture that contempt is no longer appropriate. At this stage of litigation, the issue is simple: Thrivest has received a money judgment and has not been paid. This is a classic judgment creditor's

dilemma, and it is precisely the kind of situation for which contempt is inappropriate. Thrivest has other post-judgment enforcement mechanisms at its disposal. Accordingly, the Court now exercises its discretion[1] to vacate the Contempt Order.

In addition, the Court observes that the Final Judgment Order never expressly stated that it superseded the interim Escrow Order. Upon further consideration, the Court now makes clear that the Final Judgment Order *did* supersede the Escrow Order. The Final Judgment Order incorporates the terms of the arbitration award that formed the basis of the Escrow Order. It makes no sense to require Wright to comply with an interim order and a final order at the same time, especially given that the interim order contains relief essentially identical to that in the final order. Thus, the Court now expressly states that the Final Judgment Order superseded the Escrow Order.[2]

A separate Order will follow.

---

[1] It is well-recognized that the contempt power is within the sound discretion of the district court and should be exercised with caution and restraint. *See Robin Woods, Inc. v. Woods*, 28 F.3d 396, 401 (3d Cir. 1994) (noting that district courts enjoy wide discretion in fashioning contempt sanctions); *Elkin v. Fauver*, 969 F.2d 48, 52 (3d Cir. 1992) ("The framing of sanctions for civil contempt is committed to the sound discretion of the trial court."); *see also Thompson v. Johnson*, 410 F. Supp. 633, 640 (E.D. Pa. 1976) (noting that contempt power is "discretionary, and should be undertaken with the utmost sense of responsibility and circumspection." (citation and internal quotation marks omitted)); *Littlejohn v. Bic Corp.*, 697 F. Supp. 192, 194 (E.D. Pa. 1988) ("The Court's civil contempt power . . . is discretionary and should be exercised with caution . . . ."); *United States v. Richlyn Labs., Inc.*, 817 F. Supp. 26, 27-28 (E.D. Pa. 1993) (same); *Ne. Women's Ctr., Inc. v. McMonagle*, No. 85-4845, 1990 WL 145485, at *1 (E.D. Pa. Sep. 27, 1990) (same).

[2] Furthermore, the only way to justify using contempt to enforce the Escrow Order is to conclude that the Escrow Order was equitable in nature. But even if the Escrow Order *was* equitable in nature, it was equitable in the same functional way as a preliminary injunction. Like a preliminary injunction, the Escrow Order's only equitable purpose was to "preserve the status quo" pending resolution of the merits. *Cf. Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."). Because preliminary injunctions—like the Escrow Order—provide only temporary relief, courts consistently hold that the "life-span" of a preliminary injunction ends upon entry of final judgment. *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1093 (9th Cir. 2010) ("A preliminary injunction . . . dissolves *ipso facto* when a final judgment is entered in the cause."); *United States ex rel. Bergen v. Lawrence*, 848 F.2d 1502, 1512 (10th Cir. 1988) ("With the entry of the final judgment, the life of the preliminary injunction came to an end . . . . The preliminary injunction was by its very nature interlocutory, tentative, and impermanent." (quoting *Madison Square Garden Boxing, Inc. v. Shavers*, 562 F.2d 141, 144 (2d Cir. 1977))); 11A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2947 (3d ed. 2019). Given that the Escrow Order served the same functional purposes as a preliminary injunction, the same rationale applies here.

s/ ANITA B. BRODY, J.
ANITA B. BRODY, J.

COPIES VIA ECF  03/12/2020